# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | **Case No. 08-00629-TLM** |
| **LIFESTYLE HOME** | ) | |
| **FURNISHINGS, LLC** | ) | |
| | ) | |
| | ) | **Chapter 7** |
| Debtors. | ) | |
| _____ | ) | |
| | ) | **Adversary No. 08-06103-TLM** |
| **JEREMY GUGINO, Trustee** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **WELLS FARGO BANK** | ) | |
| **NORTHWEST, N.A., a** | ) | |
| **National Banking Association,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM OF DECISION ON
## WELLS FARGO'S MOTION TO DISMISS
_____

## INTRODUCTION

The plaintiff, chapter 7 trustee, Jeremy Gugino ("Trustee"), filed this

adversary proceeding to avoid the lien of defendant Wells Fargo Bank Northwest,

N.A. ("Wells Fargo") on certain property of the debtor, Lifestyle Home

MEMORANDUM OF DECISION - 1

Furnishings, LLC ("Debtor").  Wells Fargo moved to dismiss a claim asserted in
the complaint under Federal Rule of Civil Procedure 12(b)(6), made applicable by
Federal Rule of Bankruptcy Procedure 7012.  For the reasons expressed below, the
Court grants the motion to dismiss, but will also grant the Trustee's request for
leave to amend the complaint.

**FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND**

      **A.      The factual allegations**

The facts, as alleged in the complaint, are as follows:

In September 2003, the Debtor's predecessor, Factory Direct, LLC, filed its
articles of organization with the Idaho Secretary of State.  *See* Adv. Doc. No. 1 ¶ 4.
Roughly two months later, Wells Fargo filed a financing statement claiming to
secure an interest in Factory Direct's property, including "All Inventory, Accounts,
Equipment, and General Intangibles."  *Id.* ¶ 6, ex. B.  In 2006, Wells Fargo
amended the original statement, adding the term "contract rights" to the list of
collateral covered by Wells Fargo's security interest.  *Id.* ¶ 8, ex. D.

In 2007, approximately one year after Wells Fargo filed its amended
financing statement, Keven and Silvia Hope purchased Factory Direct from its
former owner.  *See id.* ¶ 9.  Around this same time, Wells Fargo made two separate
loans:  (1) in March 2007, Wells Fargo lent the Hopes $350,000 personally, *id*.
¶ 10, ex. E, and (2) in April 2007, Wells Fargo extended a $150,000 revolving line

MEMORANDUM OF DECISION - 2

of credit to Factory Direct.  *Id.* ¶ 12, ex. F.  As consideration for both loans,

Factory Direct, as "Grantor," pledged to Wells Fargo "All of Grantor's Personal

Property" and "The property described in the Exhibits (if any) attached hereto and

made a part hereof."  *Id.*, ex. E at 2-3 ($350,000 loan); ex. F at 2 ($150,000 loan).

After these loans were made, Factory Direct changed its name to Lifestyle

Home Furnishings, LLC.  Adv. Doc. No. 1 ¶¶ 14-15.  Wells Fargo did not file any

additional financing statements, nor did it amend its existing financing statements

to reflect the name change.  *Id.* ¶ 17.

### B.    The Trustee's lien-avoidance complaint

Based upon these facts, the Trustee asserts a single claim for relief, titled

"Lien Avoidance."  *Id.* at 5.  Within this claim, the Trustee sets forth two separate

theories.

First, the Trustee claims that Wells Fargo's failure to file a new or amended

financing statement after the May 2007 name change renders Wells Fargo

unsecured as to all "inventory, accounts and equipment" acquired after May 7,

2007.  *Id.* ¶ 24.

Second, the Trustee claims that the collateral descriptions contained in the

"Business Lending Confirmation Letters" (exhibits E and F to the complaint) are

insufficient in any event and, as such, Wells Fargo does not have a security interest

in any of the Debtor's property.  *Id.* ¶ 25.

MEMORANDUM OF DECISION - 3

### C.  Wells Fargo's motion to dismiss

In its 12(b)(6) motion, Wells Fargo does not attack the entire lien avoidance claim.  Rather, Wells Fargo's challenge is limited to the Trustee's allegation that the loan documents do not adequately describe the collateral.  Adv. Doc. No. 7 at 2 (seeking "dismissal of the second ground . . . i.e., that the loan and security documents are insufficient for Wells Fargo's lien to attach to the Collateral").

A Rule 12(b)(6) motion, however, must seek to dispose of an entire claim, not simply an issue within a claim.  *See* Fed. R. Civ. P. 12(b)(6) (motion based upon "failure to state a *claim* upon which relief can be granted") (emphasis added).  But the Trustee has not objected to Wells Fargo's procedural choice in this matter.  More importantly, the complaint may be fairly viewed as alleging two lien avoidance claims, one as to all property described in the relevant loan documents (the "inadequate-description claim") and the other as to property acquired after May 7, 2007 (the "name-change claim").  Thus, consistent with the parties' treatment of the complaint and the pending motion to dismiss, this Court will view the complaint as raising two avoidance claims, and this motion as testing the sufficiency of the inadequate-description claim.

## DISCUSSION AND DISPOSITION

### A.  The legal standard applicable to Rule 12(b)(6) motions

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a

MEMORANDUM OF DECISION - 4

complaint, or any claim within a complaint, if it fails to state a claim upon which

relief can be granted.  Courts may dismiss claims under Rule 12(b)(6) "for '(1)

lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal

claim.'"  *SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780,

783 (9th Cir. 1996) (citation omitted).

Under this standard, "a formulaic recitation of the elements of a cause of

action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Further, the complaint's factual allegations must "raise a right to relief above the

speculative level."  *Id.*; *see also Gugino v. Orlando (In re Ganier)*, ___ B.R. ___,

2009 WL 513758, at *1, 09.1 I.B.C.R. 17 (Bankr. D. Idaho Jan. 16, 2009).  That

said, however, "[a]ll allegations of material fact" must be "taken as true and

construed in the light most favorable to the nonmoving party."  *Cahill v. Liberty

Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

Finally, although courts generally may not consider extraneous material in

testing the adequacy of the plaintiff's allegations, they may consider exhibits to the

complaint, or documents referred to in the complaint.  *See Manzarek v. St. Paul

Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Knievel v. ESPN*,

393 F.3d 1068, 1076 (9th Cir. 2005).  And if an allegation in the complaint is

contradicted by an attached exhibit, courts may disregard the complaint in favor of

the exhibit.  *See, e.g., Manzarek*, 519 F.3d at 1031.

MEMORANDUM OF DECISION - 5

### B.    The collateral description

The Trustee contends that the collateral description at issue is defective
because it is overly broad.  The loan agreements contain the following,
supergeneric description, as shown in the italicized language:

> **Collateral.**  Subject to the terms and conditions of the Disclosure, as
> security for the obligations set forth in Section 2.1 of the Disclosure,
> FACTORY DIRECT, LLC, . . . grants to Bank a first priority secured
> interest in the following personal property, whether existing or
> hereafter acquired, and wherever located, and all Proceeds of the
> following (including Insurance):
>
> *All of Grantor's Personal Property.*
>
> The property described in Exhibits (if any) attached hereto and
> made a part hereof.

Adv. Doc. No. 1, ex. E at 2-3 (Business Lending Confirmation Letter related to the
$350,000 loan to the Hopes) (emphasis added); *id.*, ex. F at 2 (Business Lending
Confirmation Letter related to the $150,000 credit line extended to Factory Direct,
LLC) (emphasis added).

No exhibits were attached to these loan agreements.  But an accompanying
Disclosure –  attached to the complaint as exhibit C and repeatedly referenced in
the loan documents, *see, e.g.,* Adv. Doc. No. 1, ex. E at 1-5 – defines the
capitalized term *All of Grantor's Personal Property* as follows:

> •    all accounts (including health care insurance receivables),
>     deposit accounts, contract rights, chattel paper (whether
>     electronic or tangible), commercial tort claims, instruments,
>     promissory notes, investment property, general intangibles

MEMORANDUM OF DECISION - 6

(including payment intangibles and software), letter of credit rights, letters of credit, and other rights to payment of every kind now existing or hereafter arising;

• all Inventory;

• all Equipment;

• all Documents of Title;

• all Farm Products;

• all Titled Goods; and

• all money and all investment property (including securities and financial assets), heretofore, now or hereafter delivered to or deposited with Bank or otherwise coming into the possession, custody or control of Bank (or any agent or bailee of Bank) in any manner or for any purpose whatsoever during the existence of the Agreement and whether held in a general or special account or deposit for safekeeping or otherwise.

Adv. Doc. No. 1, ex. C at 24. Each capitalized term is then further defined in the Disclosure. *Id.* at 24-28.

### C. The Disclosure adequately describes the collateral

The standard for determining whether a collateral description is adequate is set forth in Idaho Code § 28-9-108.[1] Under this section, so-called supergeneric[2]

---

[1] Idaho Code § 28-9-108 provides:

(a) Except as otherwise provided in subsections (c), (d) and (e) of this section, a description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described.

(b) Except as otherwise provided in subsection (d) of this section, a

(continued...)

MEMORANDUM OF DECISION - 7

descriptions, such as "all the debtor's personal property" or "all the debtor's

assets" are insufficient.  *Id.* § 28-9-108(c).  But the statute does not require an

extraordinary degree of specificity either.  Rather, descriptions by "Category" or

---

(...continued)

description of collateral reasonably identifies the collateral if it identifies
the collateral by:

(1)     Specific listing;
(2)     Category;
(3)     Except as otherwise provided in subsection (e) of this section, a
        type of collateral defined in the uniform commercial code;
(4)     Quantity;
(5)     Computational or allocational formula or procedure; or
(6)     Except as otherwise provided in subsection (c) of this section,
        any other method, if the identity of the collateral is objectively
        determinable.

(c)     A description of collateral as "all the debtor's assets" or "all the debtor's
        personal property" or using words of similar import does not reasonably
        identify the collateral.

(d)      Except as otherwise provided in subsection (e) of this section, a
        description of a security entitlement, securities account or commodity
        account is sufficient if it describes:

(1)     The collateral by those terms or as investment property; or
(2)     The underlying financial asset or commodity contract.

(e)     A description only by type of collateral defined in the uniform
        commercial code is an insufficient description of:

(1)     A commercial tort claim; or
(2)     In a consumer transaction, consumer goods, a security
        entitlement, a securities account or a commodity account.

---

[2]  The term "supergeneric" is used in the bracketed title to Uniform Commercial Code
§ 9-108(c).  *See* U.C.C. § 9-108 (2000) (bracketed title states, "[**Supergeneric description not
sufficient.**]").  Idaho has adopted the text of UCC § 9-108(c), but without the explanatory title.
*See* Idaho Code § 28-9-108(c).

MEMORANDUM OF DECISION - 8

by "type of collateral defined in the uniform commercial code"[3] are sufficient, with

certain enumerated exceptions.  *Id.* § 28-9-108(b)(2), (3).  As the comments

explain:

> The test of sufficiency of a description under this section . . . is that the
> description do the job assigned to it:  make possible the identification
> of the collateral described.  This section rejects any requirement that a
> description is insufficient unless it is exact and detailed (the so-called
> "serial number" test).

*Id.* cmt. 2.

Additionally, and importantly in the instant case, there is nothing in the

UCC that prohibits the parties from integrating several documents to create the

security agreement.  *See, e.g. Nolden v. Plant Reclamation (In re Amex-Protein*

*Dev. Corp.)*, 504 F.2d 1056, 1060 (9th Cir. 1974) ("there is no requirement that the

description of collateral be complete within the four corners of the security

agreement or other single document").  Consequently, parties may set forth the

collateral description in a document separate from the security agreement itself.

*See id.*

The Trustee argues that the Disclosure's exhaustive listing of categories and

types of collateral does nothing to improve upon the supergeneric phrase "All of

Grantor's Personal Property" contained in the loan agreements.  But as already

noted, the UCC allows parties to describe the collateral by "category" or "type."

---

[3]  Various types of collateral are defined in Idaho Code § 28-9-102.

MEMORANDUM OF DECISION - 9

*See* Idaho Code § 28-9-108(b)(2), (3).  Courts have also held that "'[n]ormally, the

designation of the generic 'type' of collateral covered by a security agreement will

be found to be sufficient.'"  *Liberty Savs. Bank v. Webb Crane Serv., Inc.*, 2005

WL 1799300, at *8 (D. Colo. July 27, 2005) (citation omitted); *see also Bowers &*

*Merena Auctions, LLC v. Lull (In re Lull)*, 386 B.R. 261, 266 (Bankr. D. Haw.

2008) (security agreement that "specifically identified every commonly known

category of personal property, among them goods, accounts, money, chattel paper,

general intangibles and instruments" sufficiently described collateral under

Hawaii's version of the UCC[4]).

> Commentators White and Summers are in accord:

> Section 9-108(c) states that super generic descriptions such as "all the
> debtor's assets" are not effective. . . .  Note, however, that 9-108(a)
> requires only that the description "reasonably identify" the collateral,
> leaving considerable slack.

> *Presumably subsection (b) with its six subsections showing adequate*
> *descriptions is also intended to encourage the courts to be generous*
> *here.*  Common descriptions that are blessed in subsection (b) include:
> descriptions in Article 9, such as "inventory" or "farm products," [and]
> the blessing of "category" in subsection (2) presumably would allow a
> description such as "all livestock," . . . .

> 4 James J. White & Robert S. Summers, *Uniform Commercial Code* § 31-3 ¶ b

---

[4]  The  Hawaii statute at issue, Hawaii Revised Statute § 490:9-108, is substantially
identical to Idaho Code § 28-9-108.

MEMORANDUM OF DECISION - 10

(5th ed. 2002 & Supp. 2008) (emphasis added).[5]

Moreover, while Idaho Code § 28-9-108 prohibits supergeneric descriptions, it does not prohibit debtors from granting a security interest in wide-ranging types and categories of assets. As one court explained: "If the debtor himself is willing to give a creditor a security interest in everything he owns, the code does not prevent it, whether his action is prudent or not . . . ." *James Talcott, Inc. v. Franklin Nat'l Bank*, 194 N.W. 2d 775, 782 (Minn. 1972) (quoted in *Phipps v. Peoples Nat'l Bank (In re Phipps)*, 2008 WL 5606175, at *5 (Bankr. S.D. Ill. Dec. 10, 2008). So long as the security agreement properly describes the collateral included in such a grant, it complies with Idaho Code § 28-9-108. Here, the collateral description, found within the Disclosure, is adequate.[6]

Finally, the Court rejects the Trustee's contention that *Amex-Protein,* 504 F.2d 1056, demands more specificity than that set forth in the Idaho Code. The Trustee argues that, under *Amex-Protein*, the collateral description in the

---

[5]  Idaho courts have not addressed the precise question before this Court, *i.e.*, whether a wide-ranging listing such as that contained in the Disclosure is sufficient under Idaho Code § 28-9-108. This Court's decision is consistent with Idaho case law, however. In *Karle v. Visser*, 118 P.3d 136, 140 (Idaho 2005), for example, the Idaho Supreme Court held that a security interest in a promissory note automatically attached to an action to collect on that note, even though the security agreement did not describe "choses in action" or "general intangibles." *Id.* at 140. In so holding, the court observed that "'[t]he policy of the code with regard to sufficiency of description of collateral in a security agreement is liberal." *Id.* (citing Idaho Code § 28-9-108 (2001) and *Idaho Bank & Trust Co. v. Cargill, Inc.,* 665 P.2d 1093, 1097 (Idaho Ct. App. 1983)).

[6]  There is one exception not discussed by the parties. The Disclosure describes "commercial tort claims" by type, *see* Adv. Doc. No. 1, ex. C at 24, but the code invalidates a description by "type" when the collateral is a commercial tort claim. Idaho Code § 28-9-108(e). Consequently, the collateral description here does not capture existing commercial tort claims.

MEMORANDUM OF DECISION - 11

Disclosure must be "more exact" or "more precise" in order to lead a "'reasonable

inquirer to the identity of the collateral.'"  *See* Adv. Doc. No. 9 at 4-5 (citing

*Amex-Protein*, 504 F.2d at 1060).  But the collateral description in the Disclosure

*is* more precise than that set forth in the underlying loan agreement.  As explained

above, the loan agreement contains the prohibited supergeneric description, while

the Disclosure sets forth a listing of types and categories of collateral.  Under

Idaho Code § 28-9-108(b), this list is sufficient, and would allow a reasonable

inquirer to identify the collateral.  The Trustee's demand for additional precision

lacks merit.

On the basis of the foregoing, the Rule 12(b)(6) motion of Wells Fargo is

well taken, and will be granted.

### D.    The Trustee's request for leave to amend the complaint

As a fallback argument, the Trustee requested leave to amend the

complaint, presumably in an effort to uncouple the Disclosure from the underlying

loan agreements.  The entire text of the Trustee's request, set forth in his

responding brief,[7] is as follows:

> The Complaint does not admit that the disclosure statement was ever
> given to the Debtor.   Absent evidence or an admission that the

---

[7]  The Court will consider this request – made only in a responding brief rather than in a
proper and noticed motion – only because the Ninth Circuit has held that a district court "should
grant leave to amend, even if no request to amend the pleading was made, unless it determines
that the pleading could not possibly be cured by the allegation of other facts."  *Cooke, Perkiss &
Leihe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

MEMORANDUM OF DECISION - 12

> Disclosure statement was in fact provided to the Debtor, the Defendant
> cannot properly argue that the complaint fails to properly state a claim
> – as that fact is not before the court.  The Trustee requests leave to
> amend the complaint if the court concludes that the complaint fails to
> state a claim.

Doc. No. 9 at 5-6.

Presumably, an amended complaint would allege that the Disclosure was

not made available to the Debtor.  The Trustee has not articulated a legal theory

that would allow the Court to ignore the Disclosure, even with this proposed new

factual allegation.  Nor does he specifically address that:

> (1)    The Disclosure is clearly incorporated by reference into the loan
>        agreements.  *See* Adv. Doc. No. 1, ex. E at 1 and ex. F at 1.
>
> (2)    The Disclosure was attached as an exhibit to the complaint.  *Id.*, ex.
>        C.
>
> (3)    The loan agreements, also attached to the complaint, acknowledge
>        that Factory Direct and the Hopes received a copy of the Disclosure.
>        Adv. Doc. No. 1, ex. E at 3; *id.*, ex. F at 3.

Indeed, given the statements set forth in these exhibits to the complaint, the

Trustee arguably managed to "plead himself out of a claim."  *See, e.g., Sprewell v.*

*Golden State Warriors,*  266 F.3d 979, 988-89, *amended on denial of pet'n for*

*reh'g*, 275 F.3d 1187 (9th Cir. 2001) (allegations in complaint contradicted by

uncontested facts set forth in appended arbitration award); *Nishimatsu Constr. Co.*

*v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (dismissal appropriate

if plaintiff alleges that defendant is individually liable on a contract, but contract

MEMORANDUM OF DECISION - 13

attached to complaint shows defendant signed only as an agent).

Nevertheless, the liberal standards associated with Rule 12(b)(6) motions and corresponding requests to amend lead the Court to conclude the Trustee should be allowed an opportunity to amend.  However, to have even a possibility of alleging a viable claim under the foregoing authorities, it appears the Trustee will have to allege, in good faith and following a factual investigation reasonable under the circumstances, *see* Fed. R. Bankr. P. 9011(a), (b)(3), that before signing the loan agreements, the borrowers attempted to track down the Disclosure, and, further, that the Disclosure was not readily available or known to them.  *See Truckstop.Net, L.L.C. v. Sprint Commc'ns, L.P.*, 537 F. Supp. 2d 1126, 1137-38 (D. Idaho. 2008) (construing Idaho law and other authorities).

**CONCLUSION**

The Court will grant Wells Fargo's Rule 12(b)(6) motion to dismiss the lien avoidance action as it is presently pleaded in regard to the inadequate-description claim.  The lien avoidance action relating to property acquired after May 7, 2007 (the name-change claim) is unaffected by this Decision.  The Court will also grant the Trustee's request for leave to amend.  Fed. R. Bankr. P. 7015 (incorporating Fed. R. Civ. P. 15(a)(2)).  Under the circumstances, the Court determines that any such amended complaint be filed within twenty-one (21) days of the date of the Order on this Decision.  The Court will enter an appropriate order.

MEMORANDUM OF DECISION - 14

DATED: May 7, 2009



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 15